**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

May 12, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *Belinda S. v. Frank Bisignano, Social Security Administration*
        Civil No. 1:25-cv-2081-JMC

Dear Counsel:

Belinda Shull ("Plaintiff") petitioned this Court on June 29, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for supplemental security income ("SSI") and disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in the case as well as the parties' dispositive filings. (ECF Nos. 12, 20, 21). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will affirm ALJ's and Appeals Council's determinations for the reasons explained below.

## I.     Procedural Background

Plaintiff filed her first Title II application for DIB on August 27, 2021, alleging disability as of June 19, 2020. (Tr. 18).[1] Plaintiff filed a Title XVI application for SSI on August 18, 2021, also alleging disability as of June 19, 2020. *Id.* The SSA initially denied Plaintiff's application on April 27, 2022 and upon reconsideration on July 20, 2023. *Id.* Plaintiff presented for a telephone hearing before an Administrative Law Judge ("ALJ") on August 4, 2023. *Id.* The ALJ denied Plaintiff's claims on June 28, 2024. *Id.* at 28. The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on June 9, 2025. *Id.* at 1-6.

## II.    The ALJ's and Appeals Council's Decisions

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 9) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation.  If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity "since the alleged onset date."  (Tr. 20).  At step two, the determined that Plaintiff suffered from the following severe impairments: "Irritable Bowel Syndrome and diverticulitis, left shoulder SLAP tear, osteoarthritis, tendinosis, and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c))." *Id.*  Plaintiff's non-severe impairments included "migraines, status-post scaphoid fracture of the wrist, degenerative disk disease of the cervical and lumbar spine, idiopathic thrombocytopenic purpura, hypertension, cerebral aneurysm, ankle and foot pain, and adhesive capsulitis in the left shoulder." *Id.* at 21. Finally, the ALJ also determined that Plaintiff's "Generalized Anxiety Disorder, Major Depressive Disorder, and Posttraumatic Stress Disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." *Id.* at 22.

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 24; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1525, 404.1526, 416.925, 416.926). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for 6 hours in an 8-hour day; and sitting for 6 hours in an 8-hour day. She is unable to reach overhead with her left arm. She need access to a bathroom at work.

*Id.* at 25. In reaching that decision, the ALJ reasoned in part,

> The claimant alleges disability based on multiple impairments. She stated that she cannot work because she has too many doctor's appointments. She stated that her

> gastroparesis flare-ups are unpredictable and can happen at any time. She said she never knows when she will need to vomit or go to the bathroom. The claimant testified that she has neuropathy in her feet and can stand no more than 30 minutes at a time. She experiences tingling and numbness in her hands and her fingers lock up several time a day. She has difficulty opening jars and holding onto pens. She is able to lift or carry no more than 5 pounds with both arms. She experiences pain in her hip and lower back when sitting for 30 minutes. The claimant testified that she has about 10 migraines per month. She also testified that she suffers from anxiety. She stated that she experiences low energy and usually wan[s.]
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 25-26. The ALJ went on to consider Plaintiff's reported symptoms, the medical records, and vocational expert testimony. *See id.* at 26-28. The ALJ found that the Plaintiff was able to perform past relevant work as an Office Manager. *Id.* at 28. Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff was not under disability from June 19, 2020, the alleged onset date, through the date of the ALJ's decision. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision warrants remand for several reasons: (1) the ALJ failed to properly assess Plaintiff's missed day of work each month; (2) the ALJ failed to properly consider Dr. Rohan Moffatt's October 2023 medical opinion; and (3) the ALJ failed to properly consider Dr. Rohan Moffatt's June 2023 medical opinion. For the reasons that follow, the ALJ properly determined Plaintiff's RFC. As such, I will affirm the case.

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. §

416.945(b)–(c)).  The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC.  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work."  *Rodney M.*, 2024 WL 1097192, at \*3 (internal citation omitted).  As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).  Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion."  *Id.* at 388 (cleaned up).  The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188.  A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports her conclusion *and* build an accurate and logical bridge from [that] evidence to her conclusion.") (internal quotation omitted) (emphasis in original).

> 1. The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff first argues that the RFC is unsupported by substantial evidence because the ALJ failed to include a proper analysis about the days Plaintiff has missed from work.  (ECF No. 12 at 7-13) (listing each day Plaintiff missed from work by month).  In essence, Plaintiff faults the ALJ for failing "to address this overwhelming evidence that showed Plaintiff needed to miss 2 or more days of work each month."  *Id.*  However, as the Commissioner points out, this argument assumes without evidentiary support that each medical appointment necessitated missing a full workday and ignores the fact that the ALJ did acknowledge Plaintiff's position about her absences.  (ECF No. 20 at 10).

It is true that the Fourth Circuit has recognized that when "[t]here is evidence supporting [a claimant's] need to miss work in the administrative record, and the ALJ's decision does not discuss this evidence, nor does the ALJ's decision adequately explain why the evidence should be rejected," that such an analysis can evade meaningful review. *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at \*5 (4th Cir. Apr. 14, 2023).  However, in *Dennis*, there was evidence the ALJ ignored evidence tending to show that the claimant *needed* to miss work based on her underlying medical conditions.  *See id.*  Here, the ALJ recognized Plaintiff's position that she could not work due to having too many doctor's appointments and after analyzing the underlying medical claims, the ALJ rejected such a position.  Unlike the *Dennis* claimant who was hospitalized for chronic conditions on multiple occasions, the Plaintiff here does not identify any

hospitalizations, overnight stays, or any other unpredictable emergency room visits during the alleged disability period. *See* (Tr. 25-27).

In Plaintiff's reply brief, she urges that the kinds of appointments she was attending, like for an x-ray, require "up to a few hours out of a workday" and therefore Defendant's position that there was not sufficient medical evidence showing a need to miss multiple full work days per month is "quite out of touch from reality." (ECF No. 21 at 2). The Court disagrees. Compared to the kind of treatment at issue in *Dennis*, it is clear that the treatment here is far from the unpredictable and urgent nature of frequent overnight hospital stays. *Dennis*, 2023 WL 2945903, at *5. Plaintiff also argues in her reply that Defendant "argues that Plaintiff was trying to manipulate the system by going to the doctor as often as possible or for no reason." *Id.* at 3. The Court also disagrees with this characterization of the Commissioner's argument.

To be sure, the Commissioner pointed to the general notion that "the effect of . . . ongoing treatment on [the claimant's] ability to remain gainfully employed during the period of claimed disability" may be a relevant consideration in an ALJ's RFC determination. *Meyer v. Astrue*, 662 F.3d 700, 707 n.3 (4th Cir. 2011). Yet, courts have also recognized that where frequency is a relevant factor, "[i]f the sheer number of medical visits were sufficient on its own, claimants could manufacture their own disabilities simply by going to the doctor as often as possible for any or no reason," as a matter of policy. *Hoppa v. Colvin*, No. 12-CV-847-BBC, 2013 WL 5874639, at *5 (W.D. Wis. Oct. 31, 2013). Against that backdrop, the Commissioner correctly pointed to relevant factors such as whether the claimant's appointments were scheduled, whether they necessitated a missed day from work, and whether appointments could have been scheduled outside of work hours. *See, e.g.*, *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. July 11, 2018) (rejecting claimant's absenteeism argument as "frivolous" because he failed to "point to anything in the record to suggest that his appointments would require him to miss a full day of work or that he could not schedule his appointments outside of working hours."); *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x. 902, 904 (11th Cir. Feb. 2, 2017) (rejecting absenteeism argument because "nothing in the record indicates that [the claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work"); *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (finding claimant's "current extrapolation of how many days she must have missed from work based on her medical record" was "faulty" because "it assumes she was required to miss entire days of work for each appointment").

Here, while Plaintiff did attend many doctor's appointments, as the ALJ recognized her position to be, the ALJ concluded that the medical evidence did not substantiate her claims of disabling functional limitations. Based on the ALJ's assessment of the Plaintiff's cyclic vomiting syndrome with intermittent episodes, without vomiting or nausea issues, and with normal abdomen imaging; her SLAP tear with mild tendinosis; medicated diabetes with no side effects; and the Plaintiff's lifestyle activities as a whole, it cannot be said that the failure to assess each particular missed day or including an absence threshold in the RFC constitutes reversable error. *Dennis*, 2023 WL 2945903, at *5; *see also* Tr. 26 (citing Tr. 424, 657, 666, 1039, 1048, 1057-60, 1311, 1380, 1387, 1392, 1396, 1400, 1403, 1407, 1465, 1467, 1469, 1471-72, 1475, 1478, 1481, 1496, 1521, 1538, 1542). The ALJ specifically recognized that the medical records did not "reflect a treatment regimen inconsistent with the RFC limitations." (Tr. 27). The Court is therefore unpersuaded by Plaintiff's absenteeism argument and finds that the RFC is supported by

substantial evidence on this issue.  Therefore, I will affirm the ALJ's decision with respect to Plaintiff's first argument.

2.    The ALJ Properly Consider Rohan Moffatt, M.D.'s Opinions

Plaintiff next faults the ALJ for failure to engage in a proper analysis concerning Rohan Moffatt, M.D.'s opinions in October 2023 and June 2023.  The Court will consider each argument in that same Order based on the briefing.  As the parties note, Plaintiff filed her claim after March 27, 2017, when the revised regulatory framework prohibiting an ALJ from deferring or giving specific evidentiary weight to a medical opinion was in effect.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) *corrected by* 82 Fed. Reg. 15, 132-01 (Mar. 27, 2017).

a.    *October 2023*

Plaintiff argues that the ALJ's RFC warrants remand because the ALJ failed to consider whether Dr. Moffatt's medical opinion was supported "by his own objective medical evidence and explanations." (ECF No. 12 at 16).  Dr. Moffatt's opinion concluded that Plaintiff's impairments would frequently interfere with the attention and concentration required to perform simple work-related tasks, could walk one city block before needing rest or significant pain, could sit for three hours and stand/walk for one hour in an eight-hour workday, and would need to have unscheduled breaks of 30 to 45 minutes every one to two hours (Tr. 1432).  Similarly, Dr. Moffatt concluded that Plaintiff could occasionally lift/carry less than ten pounds, was unable to grasp, turn, twist objects, engage in fine manipulation, or reach with the left arm, and would miss work more than four times per month due to her impairments (Tr. 1432-33).  As Commissioner points out, Dr. Moffatt provided no explanation and identified no medical records in support of the limitations he assessed.  Tr. 1432.  Instead, he wrote various diagnoses such as type 1 diabetes, nonintractable migraine headaches, thrombocytopenia, hypertension, gastrointestinal reflux disease, and left shoulder adhesive capsulitis.  *Id.*  To that end, the ALJ noted that

> there are no imaging studies to support any significant limitations in the lower extremities. Although the claimant has strength and range of motion limitations in her left arm, an MRI at Exhibit 43F, p. 49 does not indicate any evidence of adhesive capsulitis, which is one of the diagnoses listed in this exhibit. Additionally, there is no significant evidence of fingering or handling limitations in the left arm.

Tr. 27.  As such, the ALJ found the opinion to be unpersuasive.  In response, Plaintiff cites a series of cases all in support of the proposition that the ALJ failed to properly assess the "supportability" factor of the analysis.  As the Commissioner points out, however, the ALJ did discuss why he rejected the opinion as unsupported, why he rejected a finding of reduced strength and range of motion in the left arm, and noted contrasting evidence such as the lack of adhesive capsulitis in Plaintiff's left shoulder MRI.  *Id.*  Where Plaintiff argues the ALJ "completely ignored numerous crucial limitations" such as extra breaks, reaching limitation, and the need to miss more than two workdays per month, the Court again rejects Plaintiff's mischaracterization of the ALJ's opinion. As summarized above, the ALJ acknowledged the range of motion issues, her ability to reach, and the medical findings at Plaintiff's doctor's appointments.  (Tr. 26-27); *Owens v. Kijakazi*, No. 22-

1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023) (indicating there is no "categorical rule that requires an ALJ to specifically reject every limitation contained in a report the ALJ has discussed and found to be only partially or somewhat persuasive, so long as the reviewing court can ascertain the basis for the ALJ's findings"). Taking the ALJ's reasoning concerning the October 2023 visit, any error here was not reversible, and the Court is satisfied that the RFC is supported by substantial evidence on this issue. The Court is able to follow the ALJ's rationale for rejecting Dr. Moffatt's extreme limitation finding as inconsistent with the record and unsupported by the evidence. Therefore, I will affirm the ALJ's opinion with regard to Plaintiff's second argument.

### b.    June 2023

Finally, Plaintiff argues the ALJ erred by not evaluating the fact that Dr. Moffatt checked "yes" when asked if Plaintiff had an "impairment severe enough to prevent [Plaintiff] from working, participating in a work, training or educational activity." (ECF No. 12 at 23). Plaintiff characterizes this checkbox as a medical opinion that required analysis in the RFC. *Id.* Commissioner is again correct that under the revised regulations, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in work-related abilities, such as "physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, or other physical functions," "mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting," and various specific functions related to the various senses and environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Thus, as the Commissioner states, a checkbox reference to unspecified "training activities" without further explanation does not meet the definitions set forth in §§ 404.1513(a)(2), 416.913(a)(2). Therefore, the ALJ was not under any obligation to evaluate this checkmark as a medical opinion. Tr. 1364.

Accordingly, I will affirm the ALJ's opinion with respect to Plaintiff's third argument.

### V.    Conclusion

In sum, the Court agrees with the Commissioner that the ALJ and subsequently the Appeals Council adequately explained Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

7

J. Mark Coulson
United States Magistrate Judge